Pearsokt, J.
 

 This is Assumpsit, for the sum agreed to be paid as the hire of a slave, in 1842. The writ was issued in 1848. The defendant relied on-the Statute of Limitations. There was a special replication of a promise to pay within three years, upon which issue- was joined. To prove the new promise, the plaintiff gave . evidence of a
 
 *98
 
 conversation between himself and the defendant in 1847, in which the plaintiff demanded payment
 
 of the
 
 hire of the slave ; the plaintiff replied, he was not then ready to do so •; the plaintiff, thereupon, requested him to give his note; the defendant asked, will not other notes or judgments do ? The plaintiff replied, “yes, if they are good.” The defendant said-, “ they shall be good, or if they are not, I will make them good.”
 

 The Court instructed the Jury to find for the defendant» being of opinion that this evidence did not remove the bar of the Statute. The counsel of the plaintiff then requested the Court to instruct the Jury, that if, in their opinion, the defendant had acknowledged that the debt was still-subsisting, or, that he meant, by the language used, to promise to pay it, in either event, the plaintiff was entitled to a verdict, — the counsel insisting, that the meaning of the defendant, under the circumstances, was a question oí fact, to be ascertained by the Jury. This was refused; and for this the, plaintiff excepted. A verdict was rendered for the defendant, upon the plea of the Statute of Limitations and from the judgment thereon the plaintiff appealed.
 

 When this case was before us in 1850, 11 Ired. 447, there was no evidence, from which it could be inferred, that the
 
 'proposal
 
 to pay in notes was accepted, and it was held to be within the principle of
 
 Wolf
 
 v Flemming, 1 Ired. 290. As the case now comes up, the plaintiff has a right to insist, that it should be taken that the proposal was accepted, and that it was agreed that the debt should be paid in
 
 good
 
 notes. The point is this : Does a promise to pay in good notes, sustain the replication of a new promise
 
 'topay
 
 -within-three years.? In
 
 ■other
 
 words, is a promise to pay in
 
 good notes,
 
 the- same, in its legal effect, as a promise to pay in
 
 money ?
 
 The difference is so obvious, as
 
 *99
 
 almost to make it unnecessary to point it out. A owes B $>100. The action is barred by the Statute of Limitations. A says, I will give you a horse that is worth $100, in satisfaction o.f the debt* B agrees to the proposition ; but A afterwards refuses to deliver the horse, and, thereupon, B brings suit.. — not on the special promise, but for the original debt, and, in reply to the Statute of Limitations, alleges a new promise to pay, and for proof, relies on the promise to deliver a horse. The counsel for the plaintiff admits, that a promise to pay, means a promise to pay the morey— specie. But he suggests that a promise to pay the notes of individuals, is the same as a promise to pay in bank bills, and asks; suppose the defendant had promised to pay in notes of the “Bank of the State,” — would not that support the allegation of a new promise ? The fallacy of the argument is in this : Bank bills are so generally received as money, that they not only represent money, but, in common parlance, are taken to mean money. In our case, it was evidently not the intention of the defendant to assume to pay the debt
 
 in money,
 
 or in bank bills, beoause he as- ■ sumes
 
 specially
 
 to pay it in notes or judgments on third persons, whom he will guarantee to be good. This cannot in any way, be construed to be a promise to pay in money.
 

 The other ground of exception, because the meaning of, the words ought to have been left to the Jury, was properly abandoned.
 

 Per Curiam. Judgment affirmed,